**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Marcelino Sauseda, | |
| *Petitioner,* | No. 25 CV 3933 |
| v. | Judge Lindsay C. Jenkins |
| Anthony Wills, | |
| *Respondent.* | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Marcelino Sauseda, currently incarcerated at Menard Correctional Center, brings this habeas corpus action pursuant to 28 U.S.C § 2254 challenging his 2013 conviction in the Circuit Court of Cook County. The petition is denied.

## I.     Background

### A.     Trial and Conviction

A jury convicted Sauseda of first-degree murder of Jeffrey Maldonado and aggravated discharge of a firearm. [Dkt. 21 at 1.] The state trial court sentenced him to a 62-year prison term. [*Id.*]

At his trial, Maldonado's barber, Angel Santos, testified that on the afternoon of the murder, he and Maldonado went to get pizza in Santos's van. [*Id.* at 2.] While the van idled at a red light, Santos saw Sauseda, dressed in a white t-shirt, red shorts, and a black facial covering, standing on the street about ten feet away from the van. [*Id.*] According to Santos, Sauseda then pointed a silver gun at him while he sat in the driver's seat of his van. [*Id.*] Santos leaned back in his seat, and Sauseda fired seven shots into the driver's side window before fleeing the scene. [*Id.*] As he began to drive away, Santos saw Maldanado unresponsive and bleeding from a gunshot wound on the left side of his head. [*Id.*] Later that day, Santos identified Sauseda as the shooter from a lineup. [*Id.*]

An off-duty police officer, Brett Goldstein, also testified. [*Id.*] He was driving about 20 feet behind Santos when he saw Sauseda shooting into the van. [*Id.* at 3.] Like Santos, he testified that the shooter carried a silver gun and wore a white t-shirt, red shorts, and black facial covering. [*Id.*] Goldstein left his vehicle and began chasing Sauseda on foot. [*Id.*] After running down a nearby alley, Goldstein announced he was a police officer and Sauseda eventually threw his hands up and surrendered. [*Id.*] Goldstein testified that he never lost sight of Sauseda during the pursuit. [*Id.*]

1

Another off-duty police officer, Leon Ugarte, testified that he too began chasing Sauseda after he heard gun shots and saw Goldstein running. [*Id.*] Once the two off-duty officers caught Sauseda, Ugarte called 911. [*Id.*]

While waiting for police to respond to the 911 call, a man later identified as Santino Martinez appeared in the alley and confronted the officers. [*Id.*] Eventually, Goldstein pushed Martinez up against a fence and secured him until police arrived. [*Id.*]

Police recovered a black scarf or shirt from beneath Sauseda, which Goldstein identified as the one Sauseda wore over his mouth during the shooting. [*Id.* at 4.] Ugarte found a silver gun loaded with three bullets in the alley. [*Id.*] And police recovered four discharged cartridge cases and a fired bullet from the area of the shooting. [*Id.*] Ballistics confirmed that the cartridges near the scene and the bullet found in Maldonado's head were all fired from the silver gun found in the alley. [*Id.*]

A trace analysis specialist testified that Sauseda tested negative for gunshot residue, but certain conditions, such as wind, could prevent gunshot residue from settling on a shooter's hand. [*Id.*] And a fingerprint expert testified that she found no latent prints suitable for comparison from the gun, magazines, or cartridge cases. [*Id.*] But suitable prints, the expert continued, are recovered from firearms only about 20 percent of the time. [*Id.* at 4–5.]

After the court denied a defense motion for directed verdict, defense counsel renewed a pretrial motion he made to prevent the State from cross-examining Martinez about his gang affiliation—that he belonged to the same gang as Sauseda. [*Id.* at 5.] Martinez had planned to testify that, when he heard gunshots, he began to guide several children into his family members' house, which was near the alley where Sauseda was apprehended. [*Id.*] He saw a man running through the alley wearing jean shorts, a white t-shirt, and something on his head. [*Id.*] According to Martinez, the man then jumped into the passenger side of a car that drove off. [*Id.*] When Martinez went back to the alley, he saw Goldstein pointing a gun at Sauseda. [*Id.*]

The court ruled that the State was free to cross-examine Martinez about his gang affiliation, as it went to bias, interest, and motive. So neither the defense nor prosecution called Martinez as a witness. [*Id.* at 5–6.]

John Nicolas and Alma Sauseda testified on behalf of Sauseda. Nicolas owned the restaurant where Sauseda's mother, Alma, worked for 17 years. [*Id.* at 6.] He testified that Sauseda came by the restaurant about an hour before the shooting to pick up his mother and, after chatting with Nicolas for about a half hour, Sauseda and his mother left. [*Id.*] Sauseda, Nicolas continued, was wearing a white shirt and red, baggy basketball "gym pants." [*Id.*]

Alma testified that she then dropped Sauseda off at his grandmother's house, which was around the corner from the shooting. [*Id.*] She also said that Sauseda was wearing a white shirt and red shorts. [*Id.*]

Finally, Sauseda testified. [*Id.*] He explained that after Alma dropped him off at his grandmother's house, he went to invite his cousin, who lived around the corner, to a family BBQ happening later that day. [*Id.*] As he walked to his cousin's, he testified, he saw a man wearing blue jean shorts, a white t-shirt, and a black shirt over his face crouching between two vehicles. [*Id.*] According to Sauseda, as the man began walking toward him, Sauseda saw him fire a gun into the air four or five times before fleeing. [*Id.* at 7.] Sauseda then went toward the alley where the gunman fled. [*Id.*] That's when he heard shouting behind him and turned to see Goldstein holding a gun. [*Id.*] Sauseda began to run away in the same direction as the gunman. [*Id.*] He testified that he had never seen Santos or Maldonado and did not have a gun on the day of the shooting. [*Id.*]

## B.  Direct Appeal and Postconviction Proceedings

Following his conviction, Sauseda filed a direct appeal challenging only his "*de facto* life sentence of 62 years' imprisonment" as excessive. [Dkt. 22-4 at 4.] He argued that the trial court erred by applying a 25-year firearm enhancement while also relying heavily on the fact that the offense involved "a senseless act with a gun." [*Id.* at 9.]  He also said the trial court failed to give proper consideration to factors in mitigation, such as his limited criminal history with an absence of violent offenses. [*Id.*] The Illinois appellate court rejected his arguments and affirmed the trial court's sentence. [Dkt. 22-1 at 11.] And the Illinois Supreme Court denied Sauseda's petition for leave to appeal. [Dkt. 22-7.]

Sauseda then filed a *pro se* petition for postconviction relief in an Illinois circuit court.[1] [Dkt. 22-9.] He asserted that (1) trial counsel rendered ineffective assistance by failing to call Martinez as a witness; (2) the trial court denied him his right to a fair trial by admitting evidence that Martinez and Sauseda belonged to the same street gang; and (3) appellate counsel rendered ineffective assistance by failing to (a) object to remarks made in the prosecutor's closing argument, (b) argue that the trial court abused its discretion by permitting the state's expert to testify about issues not properly presented in her expert report, and (c) raise a sufficiency of the evidence challenge.

The circuit court denied Sauseda's petition in an oral ruling. [Dkt. 22-2 at 1419–22.] It found that Sauseda had forfeited his argument that trial counsel was ineffective for failing to call Martinez as a witness by not raising it in his direct

---

[1]     Illinois Supreme Court Rule 651(c) permits the appointment of counsel for indigent persons in postconviction proceedings. Appointed counsel must verify that they (1) consulted with the petitioner to ascertain his contentions of constitutional error, (2) examined the record, and (3) made any amendments to the petitioner's *pro se* petition necessary to adequately present the petitioner's constitutional arguments.

appeal. In any event, the court reasoned, Sauseda failed to show prejudice because Martinez's account was contradicted by other witnesses and evidence of his gang membership demonstrated bias and a motive for testifying in Sauseda's defense. The court also rejected Sauseda's arguments that his appellate counsel rendered constitutionally inadequate performance, finding that they lacked merit and support in the case law.

Sauseda appealed the decision to the Illinois appellate court. His attorney filed the state equivalent of a federal *Anders* brief, reiterating the arguments Sauseda raised in his postconviction petition and explaining why those arguments lacked merit. [Dkt. 22-10.] He also described why Sauseda's postconviction counsel provided a reasonable level of assistance as required by Illinois Supreme Court Rule 651(c). In a summary order, the Illinois appellate court affirmed the circuit court's ruling. [Dkt. 22-11 at 6.] Sauseda did not file a petition for leave to appeal in the Illinois Supreme Court.

Under § 2254, Sauseda had one year from the time his conviction became final to file a federal habeas corpus petition challenging his conviction. 28 U.S.C. § 2244(d); see *Lawrence v. Florida*, 549 U.S. 327, 329 (2007). His conviction became final on April 3, 2017. But his one-year statute of limitations tolled during the pendency of his state postconviction petition, which he mailed on September 25, 2017. The Illinois appellate court denied Sauseda's postconviction petition on August 21, 2024. From that date, he had 35 days to file a petition for leave to appeal with the Illinois Supreme Court. Sauseda never filed the petition for leave to appeal, however, so his limitations period resumed running on August 22, 2024. At that time, he had 191 days left on his one-year limitations period. That means Sauseda needed to file his federal habeas petition by March 3, 2025. But he did not file the petition until April 10, 2025, 38 days after the limitations period expired.

Broadly construed, Sauseda's petition brings six claims: (1) his sentence is excessive; (2) trial counsel was ineffective for failing to challenge the trial court's excessive sentence; (3) the trial court's rulings concerning Martinez's testimony denied him a fair trial; (4) appellate counsel was ineffective for failing to (a) raise trial counsel's ineffectiveness regarding Martinez's testimony, (b) raise prosecutorial misconduct, (c) challenge the state's expert witness testimony; (5) improper remarks made by the prosecution during closing arguments denied him a fair trial; and (6) actual innocence.

## II.  Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, a petitioner in custody pursuant to the judgment of a state court must make two showings to be eligible for a writ of habeas corpus: (1) "that he is in custody in violation of the Constitution or laws or treaties of the United States," § 2254(a), and (2) that the state postconviction court's adjudication of his claim "resulted in a decision that" either "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

4

States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2).

Relief under § 2254 is not easy to come by. As the Supreme Court "has stated unequivocally, and on more than one occasion, ... 'clearly established law as determined by [the Supreme] Court refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Berkman v. Vanihel*, 33 F.4th 937, 945 (7th Cir. 2022) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004)).

The "contrary to" prong does not apply unless "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases ... [or] confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). And a state court decision is not an "unreasonable application" of clearly established federal law unless it is "objectively unreasonable," "lying well outside the boundaries of permissible differences in opinion." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (cleaned up). Simply put, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## A. Timeliness and Procedural Default

At the outset, Sauseda's petition faces a host of procedural barriers. So before turning to the merits, the court determines which, if any, of the constitutional issues raised in his petition are eligible for habeas relief.

The Seventh Circuit has identified "two distinct ways in which a state prisoner can procedurally default a federal claim." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). First, based on principles of comity and federalism, the independent and adequate state ground doctrine precludes review "where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.*

Second, "a state prisoner must exhaust[ ] the remedies available in the courts of the State, by giving the state courts an opportunity to act on his claims." *Id.* (internal citation omitted). A prisoner meets this requirement by fairly presenting his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). In Illinois courts, this includes filing a petition for leave to appeal in the Illinois Supreme Court. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018).

The State identifies multiple procedural missteps in Sauseda's pursuit of habeas relief.[2] First, the State filed a motion to dismiss Sauseda's federal habeas petition as untimely. Second, the State asserts that Sauseda presented only his excessive sentence claim in a full round of state-court review. Third, the State points out that Sauseda never filed a petition for leave to appeal in the Illinois Supreme Court after the Illinois appellate court denied his state post-conviction petition.

The court continues to believe that factual questions may remain about whether Sauseda is entitled to equitable tolling. Those same factual questions apply to Sauseda's claimed inability to file a petition for leave to appeal in the Illinois Supreme Court. But because the State's remaining procedural argument is independently sufficient to preclude review of most of Sauseda's claims and his remaining claims fail on the merits, the court sees no need to expend judicial resources to investigate Sauseda's claims that an external factor, i.e., a drug epidemic in the prison prevented mail from coming in or out of the facility between July 22, 2024 and January 12, 2025, prevented him from timely filing his federal and state petitions.[3]

Recall that Sauseda raised one issue in his direct appeal: a constitutionally excessive sentence. But in his state postconviction petition he omitted any independent challenge to his sentence. On that basis, the state circuit court found that Sauseda forfeited all claims brought in his postconviction petition except those that alleged ineffective assistance of appellate counsel. The Illinois appellate court—the highest state court to consider Sauseda's petition—affirmed.

In other words, the state court relied on an independent and adequate state procedural rule to deny review of each of Sauseda's constitutional claims unrelated to his appellate counsel's performance. See *Mata v. Baker*, 74 F.4th 480, 486 (7th Cir. 2023) ("[W]hen an Illinois postconviction court declines to consider a claim for the ineffective assistance of trial counsel because it could have been raised on direct appeal, that determination is an adequate ... state ground for the claim's dismissal which precludes federal habeas review.") (internal citations omitted).

Because the state court denied relief on an independent and adequate state ground, Sauseda procedurally defaulted his claims for ineffective assistance of trial counsel and his challenge to improper prosecutorial remarks. Sauseda's claim of actual innocence suffers the same fate as he never fairly presented that claim to the state courts.

"Procedural default may be excused, however, where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure

---

[2]     Procedural default is an affirmative defense. *Ford v. Reagle*, 154 F.4th 884, 898 (7th Cir. 2025).

[3]     Despite the court's directive to address the merits of Sauseda's constitutional claims, dkt. 17, the State's response contains arguments based only on procedural default.

to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The court does not read Sauseda's petition as asserting good cause for his failure to properly raise various claims in the state court. Instead, broadly construed, Sauseda argues that failure to consider his procedurally defaulted claims would result in a fundamental miscarriage of justice because he is actually innocent.

"Actual innocence" is a demanding standard. Sauseda must show "that it is more likely than not that no reasonable juror would have convicted him in light" of evidence not presented at trial. *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The only evidence Sauseda points to in support of his claim is Martinez's testimony. But multiple eyewitnesses who testified at the trial contradicted Martinez's version of events. So Sauseda has not convinced this court that a miscarriage of justice would occur by applying the rules of procedural default to his claims either not raised in the state court or rejected on independent and adequate state procedural grounds.

What remains, then, are Sauseda's challenges to appellate counsel's performance and his sentence, which the court turns to now.

## B. Merits

Under *Strickland*, Sauseda needed to demonstrate that his appellate counsel's performance was deficient and that deficiency caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a petitioner challenges his appellate counsel's selection of issues presented on appeal, he must show that counsel failed "to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). And to establish prejudice, he must prove that counsel's failure to raise that obvious and clearly stronger issue "may have resulted in a reversal of the conviction, or an order for a new trial." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).

A petitioner challenging counsel's performance in a federal habeas petition faces an uphill battle. A federal court's review of an ineffective counsel claim brought in a habeas petition, the Supreme Court has emphasized, is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Not only does the federal court defer to the state court's decision on the merits so long as "fairminded jurists could disagree" on the outcome, *Richter*, 562 U.S. at 102, but the state court defers to the decisions of counsel so long as he acted "reasonabl[y] considering all the circumstances," *Strickland*, 466 U.S. at 688.

Neither the state circuit court nor appellate court provided much reasoning for their decisions to deny Sauseda's ineffective assistance of appellate counsel claims. So to prevail on his claim for habeas relief, Sauseda must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot do so.

The evidence against Sauseda was overwhelming and his appellate counsel acted reasonably in declining to raise issues with Martinez's testimony, the prosecutor's closing remarks, and the state's expert witness. Not only did Martinez have a motive to testify in Sauseda's defense but his testimony was also contradicted by numerous eyewitnesses. Sauseda presents no case law or rule of evidence, and the court finds none, supporting his argument that the state's expert witness could not testify about her experience locating fingerprints on firearms. And even if admitting the expert testimony was error (it wasn't), it was not a prejudicial error, particularly in light of the substantial evidence supporting the jury's conviction. Finally, Sauseda does not identify which prosecutorial remarks he believes were improper, let alone explain how the remarks constituted a prejudicial constitutional violation.

Straight to the point: Sauseda has fallen well short of showing that the Illinois appellate court's decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Richter*, 562 U.S. at 100 (internal citations omitted).

The same is true for his excessive sentence claim. The Seventh Circuit has held that "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (quoting *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992)). As the Illinois appellate court explained, Sauseda's 62-year sentence falls within the sentencing range for his offenses and the record shows that the trial court thoroughly considered factors in mitigation and aggravation. [Dkt. 22-1.][4]

## III.    Certificate of Appealability and Notice of Appeal Rights

This court's denial of Sauseda's petition is a final decision ending the case. He may appeal only if he obtains a certificate of appealability from this court or the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). This court declines to issue a certificate of appealability because Sauseda does not make a substantial showing of the denial of a constitutional right, *see* § 2253(c)(2), and reasonable jurists would not debate, much less disagree with, this court's resolution of his petition. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). If Sauseda wishes to appeal, he must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

---

[4]    While the Illinois Supreme Court in its decision denying Sauseda's petition for leave to appeal was the last state court to decide his excessive sentence claim, the United States Supreme Court has held that federal courts are to "look through" an unexplained decision, like the Illinois Supreme Court's, "to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

Sauseda must file a notice of appeal in this Court within 30 days after judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the court to reconsider its judgment, he may file a motion under Federal of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

## IV. Conclusion

For these reasons, Sauseda's habeas petition is denied. The court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Final judgment shall enter in favor of Respondent and against Petitioner Sauseda.

Enter: 25-cv-3933
Date: January 21, 2026

_____
Lindsay C. Jenkins